Tupper vs. Huson.

TUPPER *vs.* HUSON.

HIGHWAY: USER: DEDICATION: EVIDENCE. *(1) User of land for road, as proof of public right. (2) Proof of dedication. (3) What facts show merely a private right of way.*
REVERSAL OF JUDGMENT. *(4) For misleading instructions.*

1. The facts that a road or lane, cleared and fenced off by adjoining owners, is not a thoroughfare connecting at both ends with public roads, but terminates at one end in private unoccupied lands, and has never been used except by a few persons living along its line or near such private terminus, or by others for the purpose of access to the lands of such persons, materially affect the presumption as to the public right in such way, which might otherwise arise from proof of user.
2. There can be no *dedication* of land for a highway to a *limited part* of the public; and where a public way is claimed by dedication, there must be evidence of an actual intention of the owner to dedicate his land absolutely as a highway for the whole community.
3. The uninterrupted use and enjoyment of land as a road or way by a limited number of persons for a sufficient length of time may establish, not a public, but merely a *private* right of way by prescription.

4. The refusal of certain instructions asked by appellant in this case, followed by the giving of certain other instructions not excepted to, *held* to have a tendency to *mislead* the jury to appellant's prejudice, upon the facts in evidence; and the judgment reversed for a new trial, on that ground.

APPEAL from the Circuit Court for *Sheboygan* County.

Action for trespass in throwing down a fence upon plaintiff's premises. Answer, that the *locus* was a highway. Verdict, that defendant was not guilty of the alleged trespass. A new trial having been denied, and judgment entered upon the verdict, plaintiff appealed therefrom.

*John E. Thomas*, for the appellant.

*Edwin Clark*, for the respondent.

COLE, J. The testimony in this case is so vague and uncertain that it is difficult to get at the real facts. The witnesses doubtless made the matters about which they testified, the situation of the premises, etc., plain enough to the jury and court below, but their statements as contained in the bill of exceptions are often unintelligible. A good diagram of the different tracts of land mentioned in the testimony, and of the lane or alleged highway, would have greatly aided us in getting a correct idea of the case. Under the circumstances, we must speak with some hesitation as to what the testimony tended to prove, and what inferences might reasonably be deduced from it. The controversy is about the right of the plaintiff to maintain a fence which she built on her own land, and which the defendant removed, claiming that the *locus in quo* is a public highway. It appears that this alleged highway, which was obstructed by the fence built by the plaintiff, commences on the south at what is known as the Dye Road (a public highway running east and west), and runs along the west boundary of the plaintiff's land, on the line between the towns of Lyndon and Lima, north about eighty rods, terminating at or near the premises of persons living north of the plaintiff. It is not pretended that it extends to, or communicates with,

any other road on the north.   But it seems that parties owning land on either side of this road or lane removed the brush and standing timber therefrom in 1858, or 1859, and erected and have maintained fences along the same until 1875; and that the lane or highway has been used by the adjoining owners, and persons living on land north, and others, for passing through to the north on business, until a recent period.   The evidence tended to show, however, that gates or bars have been put across this lane or highway at different times by the owners of the adjoining land.   But it was claimed on the part of the defendant, that the lane or road became a public highway by being used continuously and uninterruptedly as such by the public for a period of ten years or more before any of these obstructions were placed across it.   On the trial, the circuit court was requested, on the part of the plaintiff, to charge, in substance, that the continued and habitual maintenance, by land-owners, of fences with gates or bars, across a lane claimed to be a highway, running over their lands to woods, where no road has been laid by public authority, if such fences, gates or bars were erected before the public acquired any right by user, would negative any inference that the owners intended or admitted the way to be a public highway; that, in a country like this state, mere user, or allowing the public to travel over unoccupied lands, was not evidence of dedication, but some more unequivocal act should be shown evincing a purpose on the part of the owner to dedicate the land as a public highway.   The court refused so to instruct, but did, among other things, charge the jury that, to constitute a dedication to the public as a highway, it is sufficient if it clearly appear that the highway has been used as such by the public; that it was unimportant in this case whether the road was used by two or three persons, or a greater number; if it was used twice as a public highway for any one to travel upon, for a period of ten years or more prior to the alleged trespass, it would be a defense to the action.

This direction, when considered in connection with the charge refused, was calculated, we think, to prejudice the plaintiff. It will be remembered that the lane or way in question was not a thoroughfare; it did not lead to any public road on the north, but terminated in the woods, or upon unoccupied lands. The evidence shows that it had never been used but by a few persons, individuals living along the way or north of it. These facts should materially qualify any inference or presumption as to the public right, which might otherwise arise from the proof of user. The fact that the persons living at the north had no other outlet to the Dye Road, except through this lane or over this way, proves nothing. For the plaintiff might have been willing that they should pass over her land, without conceding any such right to the public generally. And did it sufficiently appear that these persons had a license, or even a prescriptive right, to pass through the lane or over the way, this would fail to prove a public right common to every one. It would seem quite as consistent with the evidence to assume that this way was merely used as a means of access to the property of private persons, as that it was the means of passage for the whole community. Of course, there could not be a dedication to a limited part of the public. *Poole v. Huskinson*, 11 M. & W., 827. "In order to constitute a valid dedication to the public of a highway by the owner of the soil, it is clearly settled that there must be an intention to dedicate — there must be an *animus dedicandi*, of which the user by the public *is evidence*, and no more; and a single act of interruption by the owner is of much more weight upon a question of intention, than many acts of enjoyment." PARK, B., in *Poole v. Huskinson;* Angell on Highways, § 141. It should satisfactorily appear from the evidence that there was an absolute dedication of the way to the public use, to constitute it a highway. If the use and enjoyment were restricted to a few persons living on the adjoining lands, while the public generally were excluded from its use, it might, by prescription,

become a private way, but not a public highway. It is manifest that no public rights would arise from such use. We do not think the question whether this lane was a public or a private way, was fairly submitted to the jury. The learned circuit court seemed to think it unimportant whether the road was used by two or three persons or a greater number; provided it was used twice as a public highway for travel, for a period of ten years, this was sufficient. When applied to the facts of this case, such a charge was misleading and erroneous. It is true, no exceptions were taken to the charge of the court below; but the instruction which was asked and refused, fully embraced the proposition that the particular intention and purpose of the dedication ought to appear. As applied to the facts of this case, mere user of the way by a few persons affords less ground for inferring a dedication to the public, than in many other cases to be found in the books. On the whole, we think justice will be promoted by ordering a new trial.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.