FRYE, Respondent, vs. THE VILLAGE OF HIGHLAND, Appellant.

*February 4 — February 26, 1901.*

*Adverse possession: Permissive use of private way: Disseisin: Highways: Dedication: Intention.*

1. While the owner of a hotel was using part of the premises as a private way to the hotel barn, the owner of the adjoining lot commenced to use the same way as a means of access to and egress from the back part of his lot.  *Held*, that such use by the adjoining owner would be presumed to have been permissive, in the absence of evidence to the contrary, and therefore could not ripen into title by adverse possession.

2. Occupancy commencing by permission of the true owner cannot operate as a disseisin until it becomes visibly in defiance of his rights.

3. There can be no highway by dedication in the absence of an intention to surrender the premises to the public for a thoroughfare.

APPEAL from a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge.  *Reversed.*

Action for relief for obstructing an old traveled way which plaintiff claimed the right to use.  The action was in equity for a mandatory injunction requiring the removal of

Frye vs. The Village of Highland.

the alleged obstructions.    Two grounds were alleged as the
foundation of plaintiff's claim: first, that she was the owner
of the right of way by adverse use for more than twenty
years; second, that it was a public way in which she had a
special interest.

Plaintiff's husband purchased the north twenty-two feet
of lot 9 of the village of Highland, Iowa county, Wisconsin,
about the year 1879.    Such property was bounded on the
west by Main street, on the south by the remainder of lot 9,
on the north by lot 8, and on the east by lot 73.    Plaintiff
and her husband resided on the property from about the
day of such purchase till he died, and thereafter she con-
tinued to so reside up to the time of the commencement of
the action.    She became the owner of the property under
her deceased husband.    When such residence commenced,
for a long time prior thereto, and some time thereafter,
there was a traveled way from Main street along the south
part of lot 8 to the vicinity of the southeast corner thereof,

thence southeasterly across the northeast part of lot 9 to
lot 73, thence south along the west side of lot 73 to Spring
street.    From 1872 to about 1880 there was a hotel on the

Frye vs. The Village of Highland.

south two-thirds of lot 9, and a barn used in connection therewith on the southwest corner of lot 72, which corner was identical with the northeast corner of plaintiff's property, with the southeast corner of said lot 8, and the northwest corner of lot 73. The barn was reached from Spring street by the traveled way along the west side of lot 73, and from Main street by the traveled way along the south side of lot 8. As before indicated, the two traveled ways connected with each other by passing over the northeast part of lot 9, being of that portion thereof owned by plaintiff's husband and now owned by her.

The hotel property was purchased in 1875 by a Mrs. Patrick, together with the south twenty-four feet of lot 8 and the west rod of lot 73, covering the two traveled ways mentioned. Thereafter, as long as such hotel property was used as such, the two strips of land were devoted by the owner to the use of the patrons thereof, but she allowed all persons to use the same who desired to do so in going to and from points reached thereby, and also allowed the plaintiff and her predecessor in title to use the same as they desired in connection with the north one-third of lot 9. The hotel barn was used for some time after 1880, and the two ways were also used in connection therewith. The way on lot 8 was the means by which access to and egress from the back part of the north one-third of lot 9, and access to the back part and north door of plaintiff's house, were obtained. It was used continuously for all the purposes of travel incident to the ownership of said north one-third of lot 9, from the time plaintiff's husband purchased the same till it was obstructed by the defendant, covering a period of more than twenty years. During the entire period it was also used for travel by all persons who desired to do so, plaintiff and her predecessor in title not claiming any better right to use the way than any other person.

About ten years before the act complained of occurred,

Frye vs. The Village of Highland.

plaintiff fenced the back part of her lot, thereby shutting off the connection between the two ways. About that time the owner of lot 8, Mrs. Patrick, commenced to construct a fence to shut off the common use of the traveled way on lot 8, no complaint being made by plaintiff in regard thereto. Before completing her purpose, Mrs. Patrick abandoned it, leaving the way open to use as theretofore. Some four years prior to the act complained of, plaintiff sold the back part of her lot for the purposes of a creamery. A creamery was thereafter constructed and operated thereon, and in reaching it from Main street those desiring to do so passed over lot 8, using the old traveled way. When plaintiff moved onto the lot there were some loose boards laid along the south boundary line of lot 8 for use in passing from the north door of her house to Main street. The boards were in time taken up and a sidewalk constructed in their place.

The owner of lot 8, as indicated, used the way thereon in connection with her hotel property so long as it was operated as such, and thereafter for some years, reaching to a time subsequent to 1880, and permitted all other persons, including plaintiff, to do so without objection. Defendant placed the village engine house so as to obstruct said way, having obtained legal title to the land for village purposes. When the work of so locating the engine house was in progress plaintiff made no claim that it was an infringement upon her rights. She made some requests for favors in regard to the precise location of the building, and that was all. No proof was offered as to the width of the traveled way as actually used. The indications from the evidence were that such use was sufficient to permit persons to pass with teams, hauling loads of hay or wood. Plaintiff testified in part as follows: 'I never claimed any right to that alley when we went to live there. Did not know we had any right there. We simply used it. We claimed no right except to use it. I always thought it was a street for every-

body.  I made no claim to it then, except I thought it was a street.  I piled wood in the alley because it was convenient.  I never acquired any right to pile wood in the alley, except because it was public.  People, generally, used the alley.'

The court found that plaintiff was the owner of an open, unobstructed easement or right of way twenty-two feet wide on the south side of lot 8, extending from Main street more than 100 feet east, to and beyond where the engine house of the defendant was located, the south side of the right of way being north of plaintiff's premises on lot 9; that the said right of way was obstructed by defendant as claimed by plaintiff, and that upon demand by plaintiff for the removal of such obstruction the defendant refused to comply therewith; that plaintiff was entitled to the relief demanded in the complaint.  Judgment was rendered accordingly.  Exceptions were duly filed sufficient to raise the questions discussed in the opinion.

For the appellant there was a brief by *Spensley & McIlhon* and *Arthur J. Egan*, and oral argument by *Calvert Spensley*.  To the point that, from the fact that a way is kept open and used by the owner for his own purposes, it may properly be inferred that the use of it by others was by his consent, they cited *Harper v. Parish of Advent*, 7 Allen, 478; *Hall v. McLeod*, 2 Met. (Ky.), 98; *Stevens v. Dennett*, 51 N. H. 324; Jones, Easements, § 270, and cases cited in note 3; Id. § 288, and cases cited in note 4; *Cook v. Gammon*, 93 Ga. 298; *Burnham v. McQuesten*, 48 N. H. 446–454; *Whaley v. Jarrett*, 69 Wis. 613, 616; *Plimpton v. Converse*, 44 Vt. 158; *Bennett v. Biddle*, 140 Pa. St. 396; *S. C.* 150 Pa. St. 420; *Harkness v. Woodmansee*, 7 Utah, 227; *Davis v. Brigham*, 29 Me. 391; *Smith v. Higbee*, 12 Vt. 113; *Day v. Allender*, 22 Md. 529; *Dodge v. Stacy*, 39 Vt. 566; 19 Am. & Eng. Ency. of Law, 17; *Kilburn v. Adams*, 7 Met. 33.

For the respondent the cause was submitted on the brief of *J. P. Smelker*.

MARSHALL, J. We fail to discover in the record any support for the findings of fact, so called. They are so clearly wrong that it seems they must have been influenced by erroneous notions of principles of law applicable to the evidence. Respondent has the legal right to the use of an alley twenty-two feet wide on lot 8, bounded by the south side of said lot and reaching back more than 100 feet, acquired by adverse possession thereof for more than twenty years, according to the decision appealed from. Yet there is no evidence of any essential element of such possession. The true owner was never disseised, as it appears, for an instant, by plaintiff or any person in whose right she claims. Such owner used the alley for a time as a necessary part of an entire hotel property, it being the only way possessed by her for reaching the hotel barn from Main street or going direct to such street from the barn.. After the discontinuance of the hotel she continued to use the alley as a private way to the barn till well into the alleged twenty years of adverse possession. Those who patronized the barn must be presumed to have used the alley, provided by the owner for reaching it, as her property, by her invitation; and those who used it who were not her patrons must, under the circumstances, be presumed to have done so by her indulgence, there being no evidence to the contrary. The latter class of persons includes respondent and those under whom she claims. Their use commenced when the alley was clearly a private way for reaching the hotel barn. That circumstance indicates that the use was permissive, and there is no evidence that it changed to a hostile character at any time. The rule is elementary that permissive use, however long continued, will not ripen into title by adverse possession. *Pettigrew v. Evansville*, 25 Wis. 227; *Fryer v. Warne*, 29 Wis. 511; *Wilkins v. Nicolai*, 99 Wis. 178.

Frye vs. The Village of Highland.

Respondent's counsel seems to think the case is ruled by *Carmody v. Mulrooney*, 87 Wis. 552, and *Wilkins v. Nicolai*, *supra*. In our view those cases condemn the judgment appealed from at all points. They rest on the doctrine that an unexplained, continued use of land for twenty years raises a presumption that it was characterized during the whole period by all the essentials of adverse possession, and *prima facie* establishes it, but that such presumption may be overcome by evidence that the occupation was under some license, indulgence, or special contract inconsistent with the claim of right by the occupant. Here, there was no unexplained use for twenty years, or for any other period. The occupancy at the commencement was neither exclusive nor hostile. It is perfectly explained by the proof that the way was established for the convenience of the owner of the fee as the means of reaching the hotel barn, and that those not using it by invitation, as before indicated, did so by mere indulgence.

One of the foundation principles of adverse occupancy is that it must be of such a character as to challenge the right of the true owner to disturb it and to make that challenge sufficiently significant that such owner will not be liable, without negligence, to fail to discover its existence. That is necessary in order to satisfy the requisites of disseisin. An occupancy that commences by permission of the true owner cannot operate as a disseisin of him till his right is denied and the denial made sufficiently obvious to reasonably call upon him to act if he does not intend to submit to the changed attitude of the occupant.

The statute of limitations by means of which the title to property may be taken from one person and bestowed upon another, is grounded on laches. So occupancy, disseising the true owner, does not exist until it is visibly in defiance of the true owner's rights. *Lampman v. Van Alstyne*, 94 Wis. 417. It does not operate to deprive the true owner of

his title unless it continues uninterrupted in the same right for the full statutory period.    There being no indication of hostile use in this case, it seems useless to continue the discussion.

The trial court does not appear to have considered the claim that the alley was a public way and became so by dedication or continued adverse use.    The evidence on that branch of the case would not sustain a decision in respondent's favor.    It does not show any intention to surrender the premises to the public for a thoroughfare, and without that there can be no highway by dedication.    *Tupper v. Huson,* 46 Wis. 646.    The way in its inception, as before indicated, was private.    The fact that persons other than those who used it by invitation were permitted to do so does not militate against its private character.    Being private at the start, it would require unmistakable evidence of a change to a public thoroughfare, and uninterrupted use as such for the statutory period, to give it the character of a highway by user.    Nothing of that kind appears.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to dismiss the complaint and render judgment for defendant for costs.