NORMAN J. ELDRIDGE ET AL., APPELLEES, v. ANDREW J. COL-LINS, APPELLANT.

FILED NOVEMBER 22, 1905. No. 13,992.

1. **Highways: DEDICATION: EVIDENCE.** Evidence of user, and of surveying, platting and otherwise improving by public authorities, examined, and *held* sufficient to show the establishment of a public road by dedication.

2. **Evidence** examined and found sufficient to justify the finding and decree of the district court.

APPEAL from the district court for Hall county: JAMES N. PAUL, JUDGE. *Affirmed.*

*Charles G. Ryan,* for appellant.

*W. H. Thompson, contra.*

ALBERT, C.

This suit was brought by the plaintiffs, in their own behalf and in behalf of others similarly situated, to restrain the defendant from obstructing an alleged public road. The substance of the complaint is that the plaintiffs are the owners of the northeast quarter of section 14, township 10, in Hall county, and that the defendant is the owner of the southwest quarter and the west half of the northwest quarter of the same section; that there is a

8

public highway 26 feet wide, along the section line between sections 13, 14 and 15 in said county, and extending in a westerly direction across the state; and, that the defendant threatens and intends unlawfully to obstruct the said highway by building a fence along the west side of his land, in section 14, to the great and irreparable injury of the plaintiffs. The defendant answered, denying the existence of a public road through or over any portion of his land in section 14, and averring that the alleged road or way leading through said section and over and upon his land was, and for many years had been, a mere private way running east and west through the middle of said section, with no established width or location. The district court found that there was a public highway, 26 feet wide, running east and west through the middle of section 14, and granted an injunction restraining the defendant from obstructing it. The defendant appeals.

Some 20 witnesses were examined, and their evidence covers more than 200 pages of the bill of exceptions. There is some conflict in the testimony, but it conclusively appears that as early as 1859, seven years before the section was surveyed by the government, there was a well-defined road, in common use by the public, extending east and west through section 14, on or near the half section line; that in 1867 the county surveyor of Hall county surveyed and platted this road, and that a report of his doings in the premises, including a plat of the road, was filed with the county clerk and approved by the county board. It further appears that in 1872 or 1873 the road overseer, acting under the authority of the county board, constructed a culvert and made other improvements on the road, and further improvements thereon were made by such officer a year or two later.

The principal controversy is whether the line of that road coincides with the line of the road which the plaintiffs now claim is a highway. The plat, made and filed by the county surveyor in 1867, shows a substantial vari-

ance, especially as to that portion extending over and along the land now owned by the defendant. But, in our opinion, the evidence of early settlers and those acquainted with the early history and condition of the locality ought to prevail as against this plat. In 1862 the settlers procured a private survey to be made of section 14. Some of these men testify that when the government survey was made, four years later, the lines and corners of the latter survey coincided with those established by the private survey, and that the road then extended east and west on the half section line. By the evidence of the early settlers it is also shown that about the year 1865 the parties then occupying the land now owned by the defendant broke portions thereof, leaving about 13 feet on each side of the half section line unbroken for road purposes, and that the unbroken space at that time was used and has ever since been used and recognized as a public road. The same plan was pursued nearly, if not quite, the entire length of the road through the section and for more than 40 years buildings have been erected, fences built, groves planted, and the soil cultivated, along this road, and always with reference to it. This evidence is practically uncontradicted, at least it is of such persuasive force that we accept it as true, and are convinced, notwithstanding the plat, that as early as 1866 the line of the road was not substantially different from that now claimed by the plaintiffs.

We are also satisfied from the evidence that the road has been in constant use by the public and recognized as a highway for almost half a century, although less used now than formerly, when it was one of the great thoroughfares of the state. It is true, the evidence shows that during the winter season from 1891 to 1895 the owners of lands adjoining the road sometimes stretched wire gates across it to connect fences on either side. But, from the entire evidence, we are satisfied that such obstructions never amounted to an assertion of any right inconsistent with the easement of the public, because the

public used the road notwithstanding such obstructions, and submitted to the inconvenience, not in recognition of any right inconsistent with the free use of the road as a highway, but as an act of grace, and out of regard for the necessities of the landowners during that period. Besides, we think the facts established by the evidence are very similar to those in *Streeter v. Stalnaker,* 61 Neb. 205. There it was shown that the county board in 1867 had appointed one Thomas a special commissioner to inquire into the expediency of establishing a certain road. He surveyed and platted a road, and a report of his doings and a plat of the road were filed with the county clerk and approved by the board. Afterwards, in the same year, the road overseer constructed culverts on the road, and thereafter it was in constant use by the public. As in this case, no formal order of the county board locating and establishing a road was shown. The court said:

"In order to show that the road was established by user it was not necessary to prove an exact adherence to the line of the survey at all points. It was enough to show that there was no permanent or material deflection. It is said that the public could not acquire an easement by user in the land in question because it belonged to the general government, which is not affected by the statute of limitations. As we understand counsel for the defendant, they do not claim that the public acquired any rights by adverse occupancy of the disputed strip. Their contention is that the road was established by dedication and acceptance; and this view of the matter we think is correct. In 1866 congress passed an act declaring that 'the right of way for the construction of highways over public lands not reserved for public uses is hereby granted.' U. S. Revised Statutes, sec. 2,477. By this act the government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer of a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the

public, or the public itself, a highway was established. What the Hamilton county authorities did was perhaps insufficient to show the establishment of a road under the general road law, but was enough, we think, to indicate an acceptance of the government's bounty, and that is all that was required to create an easement. In this case there was· not only evidence of user, general and long continued, but also proof that the public authorities have assumed control over the road and had worked and im- proved a portion of it. Both facts were competent evi- dence tending to show an acceptance of a dedication."

While the defendant's lands were settled upon at an earlier period, those through whom he traces his title to the government received a patent therefor in 1878, more than ten years after the public authorities had surveyed and platted the road. In other words, applying the rule laid down in the case above cited, the road had become a public road by dedication as early as 1867, and was a public highway when the gates in question were thrown across it. That a highway cannot be vacated by occa- sional acts of trespass, especially when such acts cover only a period of three or four years, is obvious.

The defendant bases a complaint on the fact that the road is but 26 feet wide. But, as he denies the existence of any highway, it would seem that he is not in a posi- tion to complain because the court found a highway of but 26 feet in width instead of 66 feet. Just how the road came to be but 26 feet in width is not quite clear, but we infer from the record that the adjacent owners by tacit consent broke the land and built the fences and other improvements with reference to a road of that width, and the public acquiesced.

We are satisfied, after an examination of the entire record, that the decree of the district court is as favor- able to the defendant as the evidence would warrant, and we therefore recommend that it be affirmed.

. DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.