CATHERINE BRADFORD, Appellee, v. BASS FULTZ, Appellant.

Highways: PRIVATE WAY: PUBLIC USE: DEDICATION: EVIDENCE. Where one provides a way for the use of the public in dealing with him and invites the public to use it for that purpose, no length of use for such purpose will create a public right therein after the invitation has been withdrawn. The public right under such circumstances is permissive only, and if a dedication in any sense it constitutes a dedication to the private use of the owner and not to the public; as a public dedication contemplates not only a dedication by the owner but an acceptance by the public as well. In the in-

stant case the owner of ground used by him in connection with a
summer resort opened a way over his own land to his place of busi-
ness, which was used by the public during the summer season, after
which it was closed to the public by means of gates. . *Held,* insuffi-
cient to indicate any intention on the part of the owner to dedicate
the same as a public way.

**Same:** PUBLIC USE: LICENSE: REVOCATION. While continued use of
2   a way by the public with the owner's knowledge and consent has
    probative force on the question of dedication to the public, yet it
    is not sufficient of itself to show dedication, and may be overcome
    by a showing that the use by the public was not of a continuous
    and general character. In the instant case the opening of a way
    over the land of the owner for the public use in connection with
    the owner's private business during the summer season only, was in
    the nature of a license, revocable at the owner's pleasure.

**Highways:** USER. No length of use by the public of a private way
3   will constitute the same a public highway.

**Same:** OBSTRUCTION: INJUNCTION: NONABUTTING OWNER. One not an
4   abutting owner cannot enjoin the obstruction of an alleged high-
    way, by which only such inconvenience is suffered as is common to
    the general public, although it may be in a greater degree.

*Appeal from Buena Vista District Court.*—HON. N. J. LEE,
Judge.

TUESDAY, DECEMBER 15, 1914.

ACTION to enjoin the obstruction of a road and to restrain
the defendant from interfering with the use of the same by
the plaintiff. Plaintiff claims a dedication of the road to the
public, or that the public had acquired a prescriptive right to
the use of the road. Decree for the plaintiff. Defendant
appeals.—*Reversed* and *Remanded.*

*Faville & Whitney,* for appellant.

*James Deland,* for appellee.

GAYNOR, J.—That the situation of the *locus in quo* and
the relative position and relationship of the parties to the

controversy may be understood, it is necessary that we first state a few facts concerning which the evidence affords no controversy. We herewith set out a plat showing the road and the land adjoining the same. In the discussion of the facts in this case, we will make reference to this plat.

In what would ordinarily have been described as the southwest quarter of section 9 there is but eighty acres. It borders on a lake which has a meandered shore line. It was therefore described in the original government survey, as shown on the plat, as lots 1 and 2. The adjacent quarter section on the west is the southeast quarter of section 8. The north line of this quarter section also bordered on the lake, and is described as lot 4 on the plat.

The defendant, Fultz, originally owned the land in that part of section 8 lying west of the line AB, extended north to the shore line shown in the plat. The land lying east of the

AB line, extending north to the lake, originally belonged to a man by the name of Henry Fisher, who sold it to the Casino Company. Subsequently the Casino Amusement Company platted all the portion of the land which is shown as platted upon the plat herein set out. The road shown on the plat, from the point A to B and from B to C, was not included in the land platted by the Casino Company, and part of this is the road in dispute. For convenience, it is indicated on the plat as the Casino Beach road. The drive shown upon the plat in the platted portion was established by the Casino Company at the time of the platting of the same, and is not involved. Henry Fisher, the original owner of all the land lying east of the AB line, occupied and used the same as a farm for many years. His house was located north and east of the point C, and near the east end of block 3. The land lying south of both of the above tracts belonged to one Haines. There is a highway running north and south along the west side of defendant's farm, not shown in the plat. This highway leads north, around the west end of the lake to the city of Storm Lake, which is situated on the north shore of the lake. The Casino grounds are located on the south shore of the lake. When Fisher first lived upon and occupied this land, his only means of going to and from his farm was to go west from the corner of his land at point A across the farm then owned by the defendant, or that owned by Haines. However, in November, 1882, the board of supervisors established a forty-foot road known as the Fisher road, extending from point A on the plat directly west to the highway running north and south on the west side of defendant's farm. This Fisher road touched Fisher's farm only at the point A, and was the only way of getting to and from his farm buildings. Therefore Fisher made a lane leading from his buildings in a diagonal line across his land to point B, and then passed straight south to point A, where he reached this forty-foot public road established by the board of supervisors. This lane was wholly on Fisher's land. It was twenty feet in width,

and had a row of trees on each side of it from point C diagonally to point B, and thence south to point A. The buildings were north and east of what is shown on the plat as point C. It seems the road passed through a grove near point C to the buildings, which were somewhere near block 3. The portion involved in this suit, and claimed to be a highway, is from A to B and from B to D and twenty feet wide. The plaintiff claims that this highway was established as a public highway, and used as such for many years. Whether the plaintiff rests her claim upon dedication or prescription does not definitely appear from her pleading.

The petition in this suit was filed on August 26, 1912, and the plaintiff therein clams that for more than twenty-five years last past there has been established, existing, and maintained a public highway at the point hereinbefore indicated; that the highway above mentioned leads to, and connects with, the streets and alleys of the platted ground; that for many years after the platting of said ground and the selling of many lots, and after many purchasers and owners of lots had built summer residences upon the same, the road or highway in dispute was the only available way of reaching said lots with teams, vehicles, or other methods of conveyance, and is now the only practical, safe, or available, or convenient way of getting to or from the platted ground. The plaintiff owns and has built summer cottages upon lot 4 in block 2 and lot 4 in block 3, on the platted portion shown in the plat hereinbefore set out.

Plaintiff claims that the defendant has knowingly, willfully, and maliciously obstructed said highway, and closed the same against use by the plaintiff and other persons, and has forbidden the plaintiff and members of her family to drive upon and use said highway; that defendant has built a fence across said highway at the point A, and has placed other obstructions upon said highway, and is now maintaining such fence and other obstructions, which effectually close the highway from public use, and the plaintiff prays that the defend-

ant be enjoined from maintaining such obstructions, and restrained from interfering with the plaintiff in the use of said road.

The defendant, answering plaintiff's claim, says that he is the owner of the southeast quarter of section 8 and the land in section 9 immediately adjoining it on the east, and that this land constitutes one farm, and is cultivated and operated as one tract; that the whole farm is inclosed; that the land described by plaintiff as a public highway extends across defendant's farm and through a portion of the same that is now in crop, and says that the same has been continuously fenced, and the public entirely excluded from any use of any portion of the land as a highway, for more than ten years last past. The defendant further says that, if the plaintiff or the public used any portion of said land as a highway, the use was solely permissive on the part of defendant's grantors, and was a mere license to use the same, which was revocable, and which was, in fact, revoked; that any use by the public or the plaintiff was not of a definite or fixed route across the land, but was of an uncertain, indefinite, and roving line, and that the public never acquired any right whatever, by permission or otherwise, to any certain, fixed, or definite highway over any portion of said land; that whatever right the plaintiff or the public acquired, was entirely abandoned for more than ten years prior to the commencement of this action, and that for more than ten years defendant has been in the exclusive occupancy of the portion now claimed to have been a highway; that plaintiff has not suffered any special damage or injury apart from the general public by reason of any of the things alleged in the plaintiff's petition, and the plaintiff has no right to maintain this action. The defendant further says that the alleged highway has never been recognized as such by any officer of the county or township in which the land is situated; that the same has never been worked by any officer of said township, nor has such officer ever assumed the right to work the same; that no officer ever attempted to interfere with the

defendant's use of the premises in controversy, although said officers had full notice and knowledge that the defendant claimed said premises as his own, and that the public was excluded therefrom; that the plaintiff purchased her rights after the alleged highway had been closed, and the public excluded therefrom, and that whatever rights she acquired were with full notice and knowledge that the defendant claimed the right to exclude the public from the use of said alleged highway; that the plaintiff and the public now, and at the time of the commencement of this action, had a road equally convenient, passable, and accessible to the property of the plaintiff and to the Casino grounds referred to in plaintiff's petition; and that the highway not complained of is in no way a highway of necessity.

Upon the trial of the case, the parties made the following stipulations:

It is agreed that Henry Fisher owned the land east of the line AB extending north to the lake continuously until March 3, 1907, when he sold the same to the Casino Company, and it immediately took possession; that the Casino Company conveyed to Edson all the land purchased from Fisher east of line AB extending to the lake, except the platted portion, and excepting thirty feet off the same; that Edson afterwards conveyed to the defendant, Bass Fultz, on October 8, 1910; that the defendant since that time has been, and now is, the owner of the land last above described, and has been in the actual possession thereof. It is also agreed by all parties, that the original government plat book shows that lot 1 in section 9 was platted containing eighteen and thirty one-hundredths acres, and lot 2 in section 9, as originally platted, contain twenty-two and fifty one-hundredths acres, and that lot 4 in section 8, as originally platted, contained sixty-five and seventy one-hundredths acres. And it is conceded that original lots 1 and 2, in their entirety, were owned by Fisher, and passed by the conveyances referred to from him, without subdivision or change to the Casino Amusement Company. It is admitted that on July 5, 1887, the defendant, Fultz, acquired, by warranty deed, title to the southwest quarter of the southeast quarter, and lot No. 3 in section 8, and twenty-

six and fifty one-hundredths acres of the said lot 4 in section 8. It is conceded that the Casino Amusement Company platted lots 1 and 2 in section 9 by a plat dated June 9, 1906. It is conceded that the Casino grounds in the summer time, for many years, have been patronized by the general public; that cottages have been built upon the platted portion of the grounds that are occupied by the owners during the summer months. Some of these cottages were built four or five years ago and some later.

It appears that about twenty years ago this lane from the point A to the point B and diagonally to the point C was used by teams and vehicles; that at this time there was no other way of reaching point C, except this road. This, however, the evidence discloses, was confined to the summer time. It appears that, prior to the sale to the Casino Company, Fisher was the owner of all this land east of the line A and B as extended north to the lake; that he used it for farming purposes; that his buildings were near the north end of this tract; that he owned it up to the time he sold the same to the Casino Company; that the Casino Company platted so much of that tract as appears on the plat hereinbefore set out; that in the fall of 1907 the Casino Company sold all of the tract east of the line A and B, and including the land covered by the lines A and B, to one Edson, except the platted portion, and excepting thirty feet off the south end of the tract. This thirty feet was reserved for highway purposes, and for the purpose of extending what is heretofore referred to as the Fisher road, established by the board of supervisors in 1882, to point E. It appears that, at the time the Casino Company platted the portion of ground that now appears to be platted, they laid out and established a highway from the point G, shown upon the map, to the point E. The thirty feet reserved off the south end of the land conveyed by the Casino Company to Edson extended from point E to point A, shown upon the map. The evident purpose of the Casino Company in reserving this thirty feet off the south end of the land conveyed to Edson was to

make a connecting link with what is known as the Fisher road, extending west from point A, with the road established by the Casino Company, extending from G to E. There is now, and was at the time this action was commenced, a highway from D to C, shown upon the plat; from G to E, and west along the south line of defendant's land to point A; thence west to the road running north and south, west of the defendant's land, heretofore referred to, but not shown upon the plat.

It appears that during the time from 1885 that Fisher occupied the premises in controversy, and at the time it is claimed he maintained this piece of land as a public highway, he lived in the northeast part of the tract, and had there located his farmhouse and his buildings; that during the summer time, up to 1904, he, or, those acting under him, maintained a pleasure resort at that point. It appears that the public had no interest in reaching any point beyond the Fisher home and buildings, nor could it have done so if it had desired, because of the lake to the north and east. It does not appear that this road was ever worked by any one, maintained, or kept up, after it was opened up by Fisher; that no officer representing the public did any work upon it, or exercised any control over it; that gates were maintained at point A and at point B. These gates were kept closed during all the time of Fisher's occupancy, except during the summer, when they were thrown open to the public for the purpose of reaching Fisher's summer resort. It appears that this was the only way to reach Fisher's buildings or his Casino grounds from point A. It appears that the travel at no time was confined to a line between A and B between the rows of trees. This, some of the witnesses contend, was because the road was not kept in condition to travel at points.

We would take it, from reading this record, that the gates were kept open in summer as an invitation to the public to visit the Casino grounds maintained by Mr. Fisher; that they

were kept closed in the winter time to prevent people from coming to the Casino grounds and damaging the buildings.

We do not think it can be seriously claimed that during the time Fisher owned this land the road in controversy was a public road by dedication. To justify such a holding, it must appear that there was an actual dedica-

1. HIGHWAYS:
   private way:
   public use:
   dedication:
   evidence.

tion to the public and for public use, and not to his own use in dealing with the public. One may invite the public to deal with him, or to visit him and provide a distinct way for the use of the public in so doing, and yet not give it to the public for public use. Where one, in dealing with the public, provides a way by which he may be reached, and invites the public to use the way, no length of use by the public will create a public right of use, or right in the public to use it after the invitation is withdrawn. It is then but a private way, provided for the use of the public in dealng with the individual. The right simply becomes permissive so long as the business is maintained to visit which the invitation is extended. The intent to dedicate cannot be inferred from the act of the owner in adapting his land to his own purposes, for his own accommodation and convenience, or for his own profit, even though, in conjunction therewith, he permits the public to use and pass over it for any length of time. No length of time, no use by the public, will make that a public way which, if dedicated at all, was dedicated to the private use of the owner.

To constitute a dedication, two things are necessary—dedication by the owner to public use, and acceptance by the public. See *State v. Tucker,* 36 Iowa, 485.

The way in which this road was constructed, leading, as it did, from the only public highway to Fisher's buildings and his Casino grounds, the manner in which it was used and kept, the fact that it was kept open only during the season of the year when Fisher had dealings with the public, and continuously closed during the rest of the year when his business was shut down, all indicate that there was no intention, on the

part of Fisher, to dedicate this strip of land to general public use as a highway. It indicates, rather, an intention on his part to open a lane or means of communication with the general public for himself and for his use, convenience, and benefit in dealing with the public, and was thrown open to the public only during such times as Fisher found profit in contact with the public, and closed during all the year when his interest in the public and in contact with the public ceased.

In *State v. Green*, 41 Iowa, 696, this court said:

We cannot, however, see how the jury could find that a road had become a public highway, either by prescription or dedication, which, at the only point where it does not pass over uninclosed land, is, and from the earliest use of the road always has been, obstructed by bars and gates, and upon which the public has never expended anything in work or repairs. It seems to us that the existence of such gates and bars alone sufficiently show that the public use was not under a claim of right, and that there was no intention to dedicate the traveled track as a public highway.

It is true that, under certain conditions, the mere maintenance of gates will not absolutely negative the idea of dedication, but it is a strong circumstance tending to show that the road is a mere private way, and tends more strongly to negative the idea of dedication when the purpose of the road is to make an avenue through which the public may reach the buildings of the owner situated upon the land, with nothing beyond.

It often happens in cities that those dealing with the public provide ways through which the public may reach their place of business, and it may be the public does use the place so provided for many years; yet no one would think that, when the owner ceased to have business with the public and desired to change his premises, such use would create a perpetual right in the public to continue the use after the purposes for which the use was created had ceased In such case the avenue or way through which the public reaches the owner

is not primarily for the public, but for the use and benefit of the owner of the premises.

It is elementary law that the intention to dedicate on the part of the owner must be shown, and plainly shown. The opening of a way from a public road over the owner's land to his buildings or his place of business, though used by the public for the purpose of dealing with the owner, does not confer upon the public an irrevocable right to its use. The right, under such circumstances, is granted for the benefit of the owner—a mere permission or license to the public to pass over it in dealing with the owner—and is revocable by the owner when the purposes for which the right was created have ceased to exist.

While continued use by the public has probative force on the question of dedication to the public, when such use is with the knowledge or consent of the owner, yet it is not sufficient in itself, and of itself, to show a dedication,

2. SAME: public use: license: revocation.

and, in so far as the use suggests a dedication, this suggestion and the probative force of the fact of user is overcome when it is shown that the use by the public was not of a general character, but such only as occurred in dealings with the owner of the land. The use, then, is only permissive—a license by the owner to the use; revocable by the owner when the purposes of its use are ended. Upon this point see *Coburn v. San Mateo Co.* (C. C. 75 Fed. 533; *Gray v. Haas,* 98 Iowa, 502; *Lewis v. Portland,* 25 Or. 133 (35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772) ; *Tupper v. Huson,* 46 Wis. 646 (1 N. W. 332) ; *Graham v. Hartnett,* 10 Neb. 517 (7 N. W. 280) ; *Quinn v. Anderson,* 70 Cal. 454 (11 Pac. 746) ; *People v. Reed,* 81 Cal. 70 (22 Pac. 474, 15 Am. St. Rep. 22) ; *Waggeman v. North Peoria,* 155 Ill. 545 (40 N. E. 485) ; *City of St. Louis v. Wetzel,* 110 Mo. 260 (19 S. W. 534) ; *Field v. Mark,* 125 Mo. 502 (28 S. W. 1004) ; *Brown v. Stein,* 38 Neb. 596 (57 N. W. 401).

We think that the record in this case discloses the intent and purpose of Fisher in making the road in question, and that was to provide a private way across his own land and for

his own use, and we think the law is that user by the public, though it continued for many years, when such use is made only in connection with the use by those for whose benefit it was laid out, does not show a dedication and establishment of it as a public highway. No presumption of dedication arises where it is shown that the road was primarily built for the convenience of the owner, although the public had been allowed to use it for many years in dealing with the owner. Use is only presumptive evidence of dedication, at most, which may be rebutted and is rebutted by facts which satisfy the mind that the use was not general, but for specific purposes, and which show that the use was permissive only so far as the public was concerned; that it was built, primarily, for the use and benefit of the owner. As said in *Onstott v. Murray*, 22 Iowa, 468, opinion by Judge Dillon:

We are prepared . . . to say, if the public, certainly where this is with the knowledge of the owner, has claimed and continuously exercised the right of using land for a public highway for a period equal to that fixed by the statute for bringing actions of ejectment, their right to the highway, as against such owner, is complete; there being no proof that the road was so used by leave, favor, or mistake. . . . If it was a mere neighborhood, local, or timber road, much stronger evidence of a dedication by the owner, or prescriptive right by the public, would and should be required than if it were a thoroughfare, or part of an acknowledged highway between towns, or leading to a town, and, as such, constantly traveled. In cases of implied or presumed acquiescence or consent on the part of the owner, very much depends upon the location of the road, the amount of travel, the nature of the use by the public, the rights asserted by the public, the knowledge of the owner, and like circumstances. Each case must be largely decided upon its own circumstances.

No length of use of a private road will make it a public highway. See Washburn on Easements, 191, 184; *State v.*
3. HIGHWAYS: *Tucker*, 36 Iowa, 487; *Fairchild v. Stewart*,
user.          117 Iowa, 734; *Mills v. Evans*, 100 Iowa, 712.
We do not think there is anything in *Eldridge v. Collins*,

75 Neb. 65 (105 N. W. 1085), inconsistent with what has been herein said:

We are satisfied that Fisher never intended to dedicate this strip as a public highway; that he did not act indicating his intent to dedicate it as a public highway; that the public never assumed any jurisdiction over it as a public highway; that it never was dedicated as a public highway during Fisher's time. Every fact that would show the dedication of a public highway from A to B shows the dedication of a public highway from B to C. The court, however, found no dedication of the public highway by Fisher from B to C. The court, therefore, must have based its conclusion that there was a dedication of the highway from A to B and from B to D upon some act of the Casino Company during its ownership. Let us see. Following the purchase by the Casino Company from Fisher, the land was sold to Edson by the Casino Company. In this deed it reserved no highway at the point now named, but did reserve a strip off the south end for a highway thirty feet wide, from the point A to point E. Subsequently, and before that thirty feet was opened as a highway, it made arrangements with Edson to permit travel across the south part of his land to connect with the road extending from E to G, and paid him a consideration for such privilege. It is true that the manager of the Casino Company says in his testimony that he intended to dedicate to the public, at the time he platted the land shown by the plat, a highway from D to B and from B to A twenty feet wide, but all the acts of the company subsequent to this negative such intent on its part, and there is no affirmative act showing the execution of the intent. The gates were kept the same as before. They made a new road from G to E, reserved a strip off the land sold to Edson from E to A for a public highway, making a clear road from the platted land to the point A, and different from the one contended for in this suit. But suppose at the time the Casino Company did have an intent to dedicate this to the public. The intent to dedicate must be determined from the acts and

statements of the party, in connection with all the circumstances which throw light upon that intent, and not from what he may subsequently testify as to his real intent in relation to the matter. See *Columbus v. Dahn,* 36 Ind. 330. .

There can be no question that since the Casino Company purchased this land until it sold the same this land had been used and kept in the same general way that Fisher had it; that they kept it open only during the summer months, leased it for pasture after the crops were gathered, and during all the years kept the entrance to the lane closed from the public, except during the summer season. The now-declared intent of the Casino Company to dedicate this drive as a public highway is negatived by their conduct. The entrance to this lane was closed by a gate during several months of the year, and kept closed during the winter months, and this, as said by the manager, ''we did for the purpose of keeping the public out. We did not want them at all, if possible, during the winter.'' It is negatived also by the fact that they opened the road from G to E and reserved a strip from E to A for road purposes; that in the conveyance to Edson they reserved no part of the land which they now claim to have dedicated to public use.

The plaintiff makes no claim to any contractual right to the use of the highway now in dispute. She pleads neither contract nor estoppel, but rests her claim entirely upon dedication, or upon a prescriptive right. This, we think, she has failed to show she possesses.

The next question is: Can the plaintiff, under the record in this case, maintain this action? Can she enjoin the

4. SAME: obstruc-
tion: injunc-
tion: nonabut-
ting owner.

obstruction of a highway where she suffers only such inconvenience or injury as is suffered by the general public, although greater in degree? We think this question is answered in *Bryan v. Petty,* 162 Iowa, 62, from which we quote as follows:

We are confronted at the outset, however, with the contention of the defendant that the plaintiff cannot maintain

this action, because he has no other or different interest in the maintenance of the same than as one of the general public; that no private right or special interest of property of his is affected by the obstruction complained of. It has frequently been held that an abutting landowner may maintain such an action where the obstruction interferes with the free and convenient use of his abutting property. The right of the abutting landowner in such a case is a special one, and he is entitled to maintain a civil suit for its protection. *McCann v. Clarke County,* 149 Iowa, 13; *Long v. Wilson,* 119 Iowa, 267; *Borghart v. Cedar Rapids,* 126 Iowa, 313; *Ridgway v. Osceola,* 139 Iowa, 590. We have also held that, if an obstruction to a highway is such as to interfere with the free access to plaintiff's property or is such as cuts off his place of business from the free course of trade, he may maintain an action for the protection of his special right, even though he be not an abutting owner. *Ewell v. Greenwood,* 26 Iowa, 377; *Young v. Rothrock,* 121 Iowa, 588; *Platt v. C., B. & Q.,* 74 Iowa, 127. The usual showing in this latter class of cases is that the value of complainant's property and property rights is diminished by the alleged obstruction. On the other hand, we have held that one cannot enjoin the obstruction of a public highway where he suffers only such inconvenience or injury as is the same in kind with that of the general public, although it may be greater in degree as to the complainant. *Ingram v. Railway Co.,* 38 Iowa, 669-675; *City of Ottumwa v. Chinn,* 75 Iowa, 405; *Brant v. Plumer,* 64 Iowa, 33; *Ridgway v. Osceola,* 139 Iowa, 590; *Walker v. City of Des Moines,* 215 Iowa, 161. In the case before us the obstruction complained of is not such as to prevent the free access of the plaintiff to his property. There was no attempt to show that any property or property right of plaintiff was affected or diminished in value. The obstruction of the highway only compelled plaintiff, like all other travelers, to pass over the new road instead of the old. The one complaint is that the new road is not as good as the old, and can never be made as good. It is much more hilly than the old road. We infer that the old road, in its winding course, skirted the foot of the hill, whereas the new road passes over it. The following is the plaintiff's entire testimony descriptive of the inconvenience suffered by him by the change of the road: 'The road on the line of the proposed change was pretty heavy timber. There is lots of

stumps on it, and not many stumps have been grubbed out. On the new road going west from the old road there is a very steep hill. The west line is not near so steep, but is considerably hilly. I do not think you can make as good a road over the proposed new road as you could over the original road. The road as it goes east and south of the Petty land is pretty rough and considerable stumps. The road east of the Petty farm is rougher than the old road. I do not think as good a road can be made east of the Petty farm as the road across that farm.' We see nothing in the complaint that is not applicable to the general public as travelers over the same road. Not only does it not appear that plaintiff's property or the use of it was depreciated in value by the alteration, but it appears affirmatively that plaintiff's grantor, who conveyed the land to him in 1910, was one of the petitioners for the alteration. We see no escape from the conclusion that the plaintiff has failed to prove special injury such as to entitled him to maintain the action.

In the case before us, a glance at the plat will show that the plaintiff's lots do not abut upon the road in controversy. There is no proof that the plaintiff has any other or different interest in maintaining this old road than the general public. No private right or interest of property is affected by the obstruction complained of. It appears that she suffered only such inconvenience as suffered by the general public. There is no evidence tending to show that any property or property rights of the plaintiff were affected or diminished in value by obstructing the old road. The obstruction simply compelled her to travel over another route, just as convenient in point of distance as the old one, but she complains that it is not as good as the old route. But in this she suffers nothing more than the general public. The Casino Company have provided a route from plaintiff's property extending from G to E and from E to A. This road has been well traveled since it was built; for it appears that the Casino grounds have been very generously patronized since the construction of this road and by people arriving in carriages and automobiles. There is evidence that all the people, during the summer, since this

road was established and opened, came over the road extending from A to E and E to G. The whole complaint of this new road may be summed practically that, "whenever it rained, this road would be in pretty bad shape." The old road had been abandoned for a long time prior to the commencement of this action, and this new road used, and it does not appear that the patronage at the Casino grounds was in the least diminished by reason of the new route. It does not appear that the plaintiff has ever traveled over this old road since she acquired an interest in the platted portion. Under no condition could this be said to be a road of necessity.

We think the record does not put her in position to urge her present complaint. We think that the court erred in granting the injunction, and the case must therefore be reversed and remanded, with instructions to dismiss plaintiff's petition.—*Reversed* and *Remanded*.

LADD, C. J., and DEEMER and WITHROW, JJ., concurring.