WALTHAM PIANO CO., Appellant, v. THE LINDHOLM FURNITURE CO., Appellee.

**WITNESSES:** Cross-Examination—Evidence Introduced "Out of
1 Order"—Discretion of Court. The admission of evidence "out of order" under cross-examination is not necessarily erroneous. Cross-examination should, generally, be confined to matters brought out on the examination in chief, or properly inhering therein, yet the trial court has a wide discretion in relation thereto.

PRINCIPLE APPLIED: Plaintiff was suing to recover the value of pianos destroyed by fire. Defendant claimed the pianos belonged to plaintiff at time of fire. While plaintiff was developing its case, defendant on cross-examination of one of plaintiff's witnesses called for and introduced a series of letters relating to the controversy, over plaintiff's objection that they were incompetent, irrelevant and immaterial, not cross-examination, and that they were a part of defendant's affirmative defense. The identification of these letters was perhaps not cross-examination. When defendant came to developing his defense, these letters were re-identified and re-introduced and read. When they were read is not shown. *Held,* not prejudicial error.

**BAILMENT:** Sale of Property—Estoppel. A bailee holding pianos at
2 the risk of, and without storage charges to, the owner, and under an agreement to account for sales, is not estopped from denying liability for pianos destroyed by fire without his fault merely because he sold some of the pianos.

**INSTRUCTIONS:** Clearness—Hypercritical Objections. Certain in-
3 structions stating that defendant "would be" liable to plaintiff for certain pianos, and that plaintiff "would be" entitled to judgment unless defendant established his affirmative defense, considered and held to be sufficiently clear, and that the objections thereto were purely hypercritical.

**INSTRUCTIONS:** Trial—Burden of Proof—Sufficiency. Certain in-
4 structions reviewed and held to sufficiently impose on defendant the burden to establish his affirmative defense.

**APPEAL AND ERROR:** Evidence—Conflict—Verdict—Conclusiveness. A verdict on a fair conflict of evidence is conclusive on appeal.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

THURSDAY, FEBRUARY 11, 1915.

ACTION to recover the purchase price of certain pianos alleged to have been sold and delivered to the defendant. Defendant denied a sale, but pleaded that it held the instruments for sale on commission, or under an arrangement whereby plaintiff assumed the risk, and that all save a certain number which it sold were without its fault destroyed by fire, and that defendant is not responsible save for those sold by it. The case was tried to a jury, resulting in a verdict for plaintiff for the value of the pianos actually sold by defendant, and no more; and plaintiff appeals.—*Affirmed.*

*Carter, Brackney & Carter,* for appellant.

*Henderson & Fribourg,* for appellee.

DEEMER, C. J.—Plaintiff is a dealer in pianos, with its principal place of business in Milwaukee, Wis. Defendant is a corporation doing business at Sioux City, Iowa. On or about the 6th day of September, 1911, these parties entered into the following written contract:

"This agreement made and entered into this 6th day of Sept. 1911, by and between the Waltham Piano Company, of the city of Milwaukee, State of Wisconsin, party of the first part, and Lindholm Furniture Co. of Sioux City, County of Woodbury, State of Iowa, party of the second part.

"Witnesseth, the party of the second part agrees to purchase from the party of the first part Waltham and Warfield pianos under the agreement that the party of the first part is to hold a special sale. The party of the first part agrees to

furnish a special salesman at such time as the party of the second part may designate, with the understanding that the party of the second part is to pay party of the first part a commission of five per cent on the gross amount of all business done, and in addition thereto is to pay the railroad fare of the salesman from Milwaukee and return, also the hotel bill of said salesman during said sale which is not to exceed two dollars per day.

"It is further understood that the party of the second part is to pay this commission in cash to the party of the first part at the close of the sale.

"It is understood that the party of the second part will pay all the advertising expenses and bills of all kinds incident to the sale of the pianos.

"It is further agreed that the party of the first part is to sell sixty per cent of said instruments and such sales are to be subject to the approval of the party of the second part, in the event of any failure on the party of the first part to sell the required number, namely sixty per cent of the instruments shipped, then said party of the second part is obligated only to pay for such instruments as have been sold by said salesman during this sale, including the commission due thereon, and that the balance of the stock of said instruments are subject to return to the shipper, providing that said party of the first part is unable to make satisfactory arrangements with the party of the second part for settlement of same.

"Witness our hands and seals this 6th day of Sept. 1911.

> Waltham Piano Co.,
> F. L. Miller, Mgr.
> Lindholm Furn. Co.,
> M. E. Case."

Plaintiff claims that pursuant to this agreement it shipped defendant twenty-four instruments, amounting in the aggregate to $3,035.00, and that defendant had paid but $1,100.00 (including discounts) of the purchase price, leaving a balance

due of $1,935.00, for which it asked judgment with interest.
It also alleged that:

"It was orally agreed between plaintiff and defendant
that the defendant should be allowed a discount of five dollars
on all pianos except the Warfield brand, if paid for within
thirty days, and that the terms on the Warfield pianos would
be net in thirty days time. That the plaintiff shipped said
pianos on those terms, which were accepted by defendant."

The defendant admitted the execution of the contract,
and the receipt of some of the pianos was also admitted, but
it denied all other allegations of the petition. It further
pleaded by way of affirmative defense that but eight pianos
were sold under the contract, and that by reason of that fact
it did not become the owner of the remainder, but held the
same subject to plaintiff's order; and that all times after
the sale and after January 1, 1912, plaintiff was the owner
of the unsold instruments. It also pleaded payment for the
pianos sold, and it further alleged:

"That after January 1, 1912, the plaintiff herein en-
deavored to sell the remaining pianos then in possession of
the defendant herein to the defendant, but that the defendant
herein refused to buy them but orally agreed with the plain-
tiff that the pianos might remain in defendant's possession
subject to the order of the plaintiff, and that if the defendant
was able from time to time to sell any of the same, that the
defendant would account for the list price value of the pianos
thus sold.

"That on or about May 22nd, 1912, the defendant sold
the Warfield piano number 36491, and became indebted to
the plaintiff for the list value of said piano in the sum of
$110.00.

"That the other pianos were held by the defendant for
and on account of the plaintiff, and subject to its order until

March 19th, 1912, when, without any fault upon the part of the defendant the said pianos were consumed by fire.

"That the defendant herein paid all commissions and expenses due to the plaintiff, and all advertising bills incident to the sale of the pianos, and fully performed all the terms of said contract upon the part of the defendant."

In reply plaintiff admitted:

"That at some time subsequent to the date of holding of the sale and on or about January 15, 1912, some negotiation was had between plaintiff and defendant concerning the disposition of the pianos remaining unsold, but that no definite understanding or agreement was arrived at further than that pending some future negotiation and agreement concerning the disposition of said pianos said defendant orally agreed with plaintiff that it would be responsible for said pianos and any damage to the same."

Plaintiff further alleged:

"That after the holding of the sale in November and December, 1911, and after January 1, 1912, and other divers times and in divers manners said defendant exercised acts of ownership over said pianos so remaining unsold and treated the same as their own, and did make sales from said remaining pianos in a manner inconsistent with the claims now made by the defendant, and defendant is now by its acts as hereinbefore alleged estopped from now claiming that it did not own and was not responsible for the pianos so remaining in its possession after said sale, as alleged in November and December, 1911, and under the terms of the original contract."

During the trial it was discovered that defendant had sold three other pianos and that the value of the four was $594.52, and it was for this amount that the verdict was returned and judgment rendered after a trial upon the issues.

On this appeal plaintiff takes exception to a ruling on

the admission of testimony, to some of the instructions given by the trial court, and to the verdict itself, as being without support in the evidence.

I. The ruling on the admission of testimony has reference to the cross-examination of one of plaintiff's witnesses. It seems that defendant's counsel upon cross-examination extracted certain letters and correspondence passing between the parties from this witness, and introduced the same in evidence as a part of the cross-examination—this over plaintiff's objections that it was not proper cross-examination, and that the letters were a part of defendant's affirmative defense. It appears that all this correspondence passing between the parties, which had been held by defendant, was destroyed by fire and that plaintiff had been served with a notice to produce its correspondence relating to the matters in issue upon the trial. The witness being examined was plaintiff's sales manager, who had much to do with the arrangements between the parties, and that he came to Sioux City for the purpose of opening the sale referred to in the contract; that he also came to Sioux City about January 15, 1912, to check up and settle with defendant; that he did check up the pianos, and had some conversation with defendant's agent with reference to those not sold, or sold by defendant on time. After giving testimony as to these and some other matters, and upon cross-examination of the witness, the record shows the following, among other matters:

*1. Witnesses: cross examination: evidence introduced "out of order:" discretion of court.*

"By Mr. Fribourg: At this time the defendant asks the plaintiff to produce all correspondence, or rather all original letters sent by the Lindholm Furniture Co. or its representatives to the Waltham Company in relation to this contract and this piano transaction, and all the correspondence or letters or copies of correspondence or letters sent by the Waltham Company to the Lindholm Company with reference to these transactions.

"By Mr. Brackney: The plaintiff objects to such motion on the ground that the correspondence, if any, is a part of the affirmative defense of the defendant in this action. That the notice which was given to the plaintiff to produce the original correspondence or copies thereof was so indefinite and vague as to not be a proper notice to the plaintiff or its attorneys. And in the notice given on April 5th by the attorneys for the defense to the attorneys for the plaintiff, no particular correspondence was designated, or was it set out in the notice to whom the letters were written or addressed, and no dates given, and no subject of correspondence set up so as to give the plaintiff any notice of the correspondence the defendant desired. And we particularly object on the ground that it is not proper cross-examination.

"Defendant then offered in evidence Exhibit '1' being notice to produce letters and correspondence.

"By Mr. Brackney: In response to that we have the notice to the defendant to make more specific, which was made on the 7th day of April, 1913.

"By the Court: It seems to me this notice is specific enough to notify you of the letters that he wants. And under the facts in this case, the correspondence having been destroyed by fire, it is not presumed the defendant could give the dates of the letters.

"By Mr. Brackney: There has been no evidence introduced yet to show what happened to the correspondence.

"By the Court: We will have to have this correspondence here on the trial.

"By Mr. Brackney: We have no objection but we want our position understood. We do not want to turn over the entire correspondence in the case to the defendant for the purpose of giving them the privilege of examining and fixing up anything, if such might be done.

"By the Court: The correspondence which led to his coming here, you may produce that, prior to January 15th.

"By Mr. Brackney: We would like to make this further

objection now, and further object to this as incompetent, ir-relevant, immaterial and at this time not proper cross-exami-nation.

"Overruled; plaintiff excepts.  .  .  .

"By Mr. Fribourg: We offer at this time Exhibit 2 in evidence. I understand the foundation has not been laid for the introduction of this copy, but we will supplement that by proof that these letters, every one of them, were destroyed in the fire.

"By the Court: Subject to the showing that the originals were destroyed it may be admitted.

"By Mr. Brackney: Let the objection of the plaintiff stand to each and all of these exhibits on that ground, that they are incompetent, irrelevant and immaterial and not proper cross-examination, being a part of the defendant's own case.

"By the Court: It may be admitted subject to the show-ing that the originals are destroyed.

"The plaintiff excepts.

"By Mr. Fribourg: The defendant now offers in evidence Exhibit 6, letter from plaintiff to defendant, dated Sept. 9, 1911.

"By Mr. Brackney: Objected to as last above.

"Objection overruled. Plaintiff excepts.

"By Mr. Fribourg: The defendant offers in evidence Exhibit 7, being a letter press copy or carbon copy of a letter from the plaintiff to the Lindholm Company, dated Sept. 13, 1911, in answer to Lindholm's letter of September 9th.

"By Mr. Brackney: The plaintiff objects to the intro-duction of Exhibit 7 for the reason that the proper founda-tion has not been laid and it is incompetent, immaterial, ir-relevant and not proper cross-examination, and for the objec-tion heretofore made to the rest of the exhibits. Objection overruled. Plaintiff excepts.

"The defendant then offered in evidence as a part of its cross-examination of the witness, F. L. Clark, Exhibits 8, 9,

10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33, and the plaintiff objected to the introduction into evidence of each and every said exhibit when the same was offered for the reason that the same was incompetent, irrelevant, immaterial and not proper cross-examination and was a part of the defendant's affirmative defense.

"(Clark) : I came to Sioux City again in January, 1912, about the 16th and again in April, 1912. I came in April to see Mr. Case of the Lindholm Company with reference to this transaction.

Q. "Was your coming on the 15th of April due, among other things, to additional correspondence that had . passed between the Lindholm Company and the Waltham Company?

"Plaintiff objects as not proper cross-examination and calling for a conclusion of the witness.

"By the court: It seems to me that under the pleadings you allege that on January 15th a new arrangement was made, and I think that would be part of your defense.

Q. "What did you do here in April?

"Plaintiff objects as not proper cross-examination, incompetent, irrelevant and immaterial. Objection overruled. Plaintiff excepts.

"I came here to see Mr. Case and he was in Chicago, and I went direct to Chicago and saw Mr. Case the next day, the morning of April 10th.

Q. "This meeting you had with Mr. Case in Chicago in April was with reference to this identical transaction, was it not?

"Objected to as not proper cross-examination, and a part of the defendant's own case. Objection overruled. Plaintiff excepts.

A. "Yes, sir.

Q. "And that meeting which you had in April was, among other things, a result of that correspondence which had taken place between the Lindholm people and the Waltham people, prior to that time, was it not?

"Plaintiff objects same as last above. Objection overruled. Plaintiff excepts.

A. "I believe that there was some correspondence.

By Mr. Fribourg: "Will you please produce, now, Mr. Brackney, the correspondence between the plaintiff and any of its representatives and the defendant and any of its representatives up to the 10th of April, 1912.

By Mr. Brackney: "We object to the introduction of these exhibits at this time for the reason that the proper notice has not been given, and that the correspondence, if any, is a part of the defendant's affirmative defense and not proper cross-examination in this case. That the demand made upon the attorneys for the plaintiff to produce their correspondence was so vague and indefinite as not to constitute due and legal notice under the statutes, and for the further reason that it is immaterial, incompetent and irrelevant.

By the Court: "He has testified as to part of the transaction, and I suppose they may enquire into the whole transaction. Objection overruled. Plaintiff excepts.

"The defendant then offered into evidence as part of its cross-examination of the witness F. L. Clark, Exhibits 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 and 47, and to the introduction of each of the said exhibits the plaintiff made timely objection on the ground that the evidence was incompetent, irrelevant and immaterial, under the issues in this case, not proper cross-examination and part of the defendant's affirmative defense. Objection overruled as to each exhibit. Plaintiff excepts as to each ruling.

"When I came to Sioux City to see Mr. Case in April I had been informed that Lindholms had been burned out and that after the fire Mr. Case refused to have any responsibility for the pianos.

"As part of the cross-examination defendant introduced Exhibits 53 and 54, 56, 58, 60, 61 and 63, no objection by plaintiff.

Q. "Did you in your talk in the middle of January with

Mr. Case refer to this letter of yours of December 16th, Exhibit 25, and their letter to you, Exhibit 26, of December 19th?

"Plaintiff objects as not proper cross-examination, and for the reasons heretofore stated. Objection overruled. Plaintiff excepts.

"A. I may have called his attention to it and we talked it over.

"Q. What was the talk?

"Plaintiff objects as incompetent, irrelevant, immaterial trying to change the terms of a written instrument and not proper cross-examination. Objection overruled. Plaintiff excepts.

"By Mr. Brackney: Let the same objection stand to each question on this line of cross-examination. Objection overruled. Plaintiff excepts.

"By Mr. Brackney: Let the same objection stand to each question on this line of cross-examination.

"By the Court: As not proper cross-examination, yes, sir. And the objection will be overruled and plaintiff's exceptions noted.

"A. The talk was on the settlement for the balance of the pianos or taking them away and was in accordance with the latter part of the contract where it reads that what pianos are not sold we shall take back if some other adjustment has not been made and no satisfactory arrangement was made."

When defendant came to the introduction of its testimony, practically all these letters and exhibits were again identified by its witnesses or by admissions of plaintiff's counsel, and introduced in evidence; but it does not appear when they were read to the jury. The mere identification of the letters by plaintiff's witness, while it may not have been cross-examination in every case, or perhaps in none, would not be prejudicial to the plaintiff in any way. It was required to present them for defendant's use because of the notice served by defendant to produce, and in producing them it in effect

admitted the genuineness thereof. If not read as part of the cross-examination, there was no possible prejudice, and even if read, as they were properly identified and afterward introduced by defendant as a part of its case, we are constrained to hold there was no possible prejudice to the plaintiff because introduced out of order.

Some of these letters were immaterial to the issues in the case, but as a rule the objection was not specific enough to call for a ruling on these particular letters, and no complaint is now made regarding the introduction of any particular letter. The court has a wide discretion in limiting the scope of cross-examination, but, of course, should adhere to the American rule and confine the cross-examination, as a general thing, to matters brought out on the examination in chief, or properly inhering therein. Some exceptions exist as to this rule, as where it is attempted to show the witness's interest and bias, or other matters going to the weight or competency of his testimony. Of course, a defendant should not, as a rule, be permitted to make out his affirmative defense by an illegitimate use of the right of cross-examination, but where the matter relates to letters, documents or other exhibits, the mere identification and offer thereof as a part of the cross-examination of an adversary's witness is not prejudicial where the same matters are afterward offered and read as a part of defendant's case.

There was no error here of which plaintiff may justly complain.

II. The trial court gave no instruction with reference to the estoppel pleaded in plaintiff's reply. In this there was no error, for the reason that under the issues as tendered by defendant, and according to the instructions as given, defendant was required to show in defense, in order to escape liability, that after the sale contemplated by the original contract, it made a subsequent agreement with plaintiff to hold the pianos without storage charges at plaintiff's risk, and to account for only

2. BAILMENT: sale of property: estoppel.

such as it sold. If they were so held, and even though there might not have been an express agreement that defendant should account for any that were sold by him, the law would imply such an agreement; and from the fact that defendant made some sales after the making of such agreement, no estoppel would arise preventing defendant from denying liability for those which were destroyed by fire without any negligence on its part.

In other words, the mere sale of some of the pianos held at plaintiff's risk would not obligate the defendant to pay for them all, if, as defendant contends, and as the court instructed, the jury found that the pianos were all being held at plaintiff's risk. Such facts lack many of the essential elements of an estoppel, and there was no error in failing to instruct upon that issue tendered by the reply.

III. The fourth instruction given by the court read as follows:

3. INSTRUCTIONS: clearness: hypercritical objections.

"Such are the issues between the parties as made by their pleadings. And you are instructed that the undisputed evidence shows that the parties entered into the contract Exhibit 'A' which has been introduced in evidence. That in pursuance of said contract the plaintiff shipped to the defendant twenty-three pianos, the agreed value of which is $2,930.00. That the defendant has settled with plaintiff for seven of the twenty-three pianos, the agreed value of which is $995.00.

"And you are instructed that under the terms of the contract exhibit 'A' the defendant *would be* liable to account to plaintiff for the remainder of the pianos unsettled for, and the plaintiff *would be* entitled to judgment for $1,935.00, and interest, unless the defendant has established, by a preponderance of evidence, the affirmative allegations set up in its answer."

The use of the words which we have italicized is criticized. This objection is hypercritical. This language to the minds of any ordinary jury meant the same as if the court had in-

structed that defendant was liable to plaintiff unless the defendant established its affirmative defense. It is also said that the instruction as a whole is not clear. We are not justified in requiring that instructions be in any stereotyped form, or that courts should use any given style of expression. It is clear enough that the instruction gave to the jury a correct understanding of the law as applied to the particular facts found by it from the testimony.

In this connection, the fifth and sixth instructions given by the trial court should also be considered.

"5. You are instructed that in case of loss by fire, and destruction of personal property, the loss falls upon the party in whose name the title to property is at the time of the fire. And under the contract, Exhibit 'A,' introduced in evidence, the title to the pianos shipped by plaintiff and accepted by defendant *would be* in the Lindholm Furniture Co., subject to be divested, according to the terms thereof, in case at a special sale to be held, less than sixty per cent of the pianos were sold. In this case the undisputed evidence shows that a special sale was held, and they did not succeed in selling sixty per cent of the pianos. The defendant claims that subsequent to said sale, an agreement was made whereby they offered to return said pianos to the plaintiff, and at plaintiff's request they held the same subject to plaintiff's order, without charging anything for storage thereon.

4. INSTRUC-
TIONS: trial:
burden of
proof: suffi-
ciency.

"And you are instructed that if the defendant has proved to you by a preponderance of the evidence, that after said special sale an agreement was made between the witness, Clark, representing the plaintiff, and the Lindholm Furniture Co., by which it was agreed that the Lindholm Furniture Co. should hold the pianos subject to the order of plaintiff, at plaintiff's risk free of charge, then, and in that case there would be a divesting of the title to said pianos from the Lindholm Furniture Company and the same would reinvest in the plaintiff, and the defendant would not be liable for

any loss occasioned by reason of damage by fire occurring to said pianos, without the fault of the defendant.

"6. So if you find from the evidence in this case that subsequent to the special sale of said pianos, and on or about the 15th day of January, 1912, there was an agreement between the plaintiff and the defendant, by which the defendant was to hold the pianos in question, subject to the order of plaintiff, at plaintiff's risk, and not to charge the plaintiff anything for storage thereon; and you further find that a portion of said pianos were subsequently destroyed by fire, without the fault of the defendant, then you are instructed that the defendant would not be liable in this case for the pianos so destroyed by fire. But if the defendant has failed to prove to you by a preponderance of the evidence that there was such an agreement, or that the pianos, or a portion thereof, were destroyed by fire, without the fault of the defendant, then the defendant would be liable to the plaintiff for the agreed value of the pianos shipped, which the defendant has not accounted for to the plaintiff. Or if you find from the evidence that the agreement was that the defendant should hold the pianos under the contract, Exhibit 'A' at defendant's risk and be responsible therefor and account to plaintiff therefor, then the defendant would be liable for the pianos destroyed by fire."

From these and the previous instruction, already quoted, it is apparent that in order for defendant to escape liability, it had to show to the satisfaction of the jury that the agreement pleaded by it as an affirmative defense was in fact made, and in the event it failed to do so, plaintiff was entitled to judgment for the full amount of its claim.

The reference to the effect of the special sale, in the first paragraph of the fifth instruction, is a little obscure, but taking the charge as a whole, it seems clear that the burden was cast upon defendant to establish its affirmative defense, and if it failed in that, plaintiff was entitled to recover for all the pianos. Really this fifth instruction is not challenged

because of its reference to the special sale, and no mention of this point is made in argument. The main proposition as applied to this and to instruction No. 6 is that there was no testimony to justify the giving of the instructions. Counsel overlook the testimony of defendant's witness Case, as set out in appellee's amendment to the abstract, which is not denied. True, this testimony was squarely denied by appellant's witness Clark, and there was some testimony in corroboration of the latter; but this conflict simply raised an issue for the jury, and its finding is conclusive and binding upon us on this appeal.

It is strenuously contended that title to the pianos passed under the original contract. For the purposes of this appeal, the point must be conceded, no matter what effect the law would give to the contract; for the court instructed that the title did pass thereunder, subject to return of the goods, and that plaintiff was entitled to recover unless defendant established the affirmative defense pleaded by it.

There is nothing here of which plaintiff may justly complain.

IV. As already intimated, we find enough testimony in the record to sustain the verdict of the jury, and appellant's contention to the contrary is without substantial merit. There was direct testimony as to the number of pianos destroyed by fire, and as to the number sold by defendant, for which it should account, and the verdict has support here.

5. APPEAL AND ERROR: evidence: conflict: verdict: conclusiveness.

Finding no prejudicial error in the record, the judgment must be, and it is—*Affirmed.*

EVANS, PRESTON and WEAVER, JJ., concur.