SAM ROSENSTEIN, Appellee, v. BERNHARD & TURNER AUTOMOBILE COMPANY, Appellant.

**MASTER AND SERVANT:** Violation by Agent of Instructions.  A
1   master who clothes his agent with authority to do a named thing is liable for whatever the agent does which is *incident to the performance of that thing,* irrespective of the instructions of the master. So held where the agent had authority to make certain repairs on automobiles, and after repairing one, took it out of the shop and upon the highway, in order to test it.

**NEW TRIAL:** Excessive Verdict—Allowance of Avoidable Damages.
2   A verdict excessive because of the allowance of damages which plaintiff could easily have avoided by reasonable effort, and with no expense, will be reduced by the amount of such excess.

*Appeal from Des Moines Municipal Court.*—T. L. SELLERS,
Judge.

DECEMBER 21, 1920.

REHEARING DENIED OCTOBER 27, 1921.

ACTION to recover damages resulting from a collision be-
tween an automobile driven by the employee of the plaintiff and
an automobile driven by the alleged employee of the defendant.
Defendant appeals from a verdict and judgment against it.—
*Affirmed on condition.*

*Brockett, Strauss & Blake,* for appellant.

*H. L. Bump,* for appellee.

ARTHUR, J.—This is a very voluminous record, for a small
case.

The collision and consequent accident occurred at the inter-
section of Sixth Avenue and Chestnut Streets in the city of Des
Moines, at about 2 o'clock in the morning of the 9th day of April,
1918. Defendant was engaged in operating a
general repair and storage garage in the city
of Des Moines, and one C. E. Booth was one of
the employees of defendant. On the night of the accident,
Booth was engaged as a night floor man, whose duty it was to
make slight adjustments of cars, change tires, and do any gen-
eral work which could be done on the floor of the garage. Morden
and Kellogg, residents of Minneapolis, Minnesota, drove into de-
fendant's garage in the evening before the accident, after Booth
had gone to work, and the shop proper on the second floor of the
garage had been closed for the day. Morden and Kellogg were
driving a Packard Twin-Six automobile, and asked Booth, who
approached them to wait upon them, if he could adjust the car-
buretor and drain the gasoline line and have the car ready to go
out early the next morning, as they expected to drive from Des
Moines to Minneapolis, and wanted to start early. Booth under-
took the job, and performed the service of what they call "ding-
ing" the carburetor, and drained out the gasoline, after making

1. MASTER AND
SERVANT: vio-
lation by agent
of instructions.

some adjustments.  Then Booth took the car out on the street, about 11 o'clock, to test out the carburetor and see if he had it properly adjusted,—as Booth put it, "to see whether or not it would work on a pull."  The adjustment made was not quite satisfactory to him, and he brought the car back to the garage and made some further adjustments.  Again, at about 2 o'clock in the morning, Booth took the car out and drove it up Seventh Street and over to Sixth Avenue, and down Sixth Avenue to Chestnut Street, where the collision occurred.  Dick Martin, the driver of plaintiff's car, was driving a Ford taxicab east on Chestnut Street, with three passengers, Lieutenant William H. Kober, Lieutenant Baker, and Sergeant Levenick, and arrived at the intersection of Chestnut Street and Sixth Avenue, where he collided with the car driven by Booth.  In the collision, the taxicab was damaged, to some extent.  Later, about 6 o'clock in the morning, the taxicab was removed to defendant's garage.  Later, in a day or two, the injured taxicab was taken to the Herring Motor Company, where it was repaired and painted.

This action is brought for injury to the taxicab, and for loss of use of the car during the time it was being repaired.

The plaintiff alleges that defendant was negligent, in that its employee was driving a heavy car at an excessive rate of speed, and was not taking proper precaution and care at the intersection of streets where the collision occurred; and that plaintiff was not guilty of contributory negligence.  Plaintiff claimed damages for injury to his car in the amount of $127.50, and set out the items, and claimed damages for loss of the use of the car in the amount of $300, $10 a day for 30 days.

The jury returned a verdict for the plaintiff in the amount of $399.50, and judgment was entered for that amount, from which judgment defendant appeals.

This is a typical automobile collision case, in most respects.  It has the feature of the liability of the master for the negligent acts of his employee, which does not so often occur.

It is conceded that Martin, the driver of plaintiff's car, was the employee of the plaintiff, and was acting within the scope of his employment.  It is also conceded that Booth, who was driving the Packard car, was the employee of the defendant.  But whether Booth was acting within the scope of his employ-

ment at the time of the collision, so that his negligence, if he was negligent, is chargeable to the defendant, was an issue in the case, and is, logically, the first question to examine; for, if defendant is not liable for the negligence of Booth,—if he was negligent,—because, though an employee, he was without the scope of his employment in taking the car out of the garage onto the street, to drive it for any purpose, that would end the case. Defendant assigns as error the submission of this issue to the jury.

Defendant insists that the evidence shows, as a matter of law, that Booth was not acting within the scope of his employment at the time of the accident. We have examined the evidence carefully, bearing on that question, and conclude that it was an issue of fact, to go to the jury. The evidence did not warrant the court in holding that, as a matter of law, Booth was not acting within the scope of his employment. It would serve no good purpose to set out the evidence here.

Defendant introduced testimony to establish that they had especially instructed Booth not to take automobiles out of the garage, and they further insist that it was not within the scope of Booth's employment to make such repairs or adjustments as the Packard car required. Defendant introduced evidence to establish that, in taking the car out of the garage, Booth was acting contrary to positive instructions of his employer not to do so, and that, therefore, the defendant is not liable.

Counsel for defendant argues that the undisputed evidence shows that Booth was charged with no duty and given no authority by defendant to test carburetors; that, if Booth had had authority from his employer to test carburetors, and do the work which he was asked to do on the Packard car, the defendant was entirely protected from liability for any negligence he might be guilty of, while upon the streets driving the car that had been left for repair, in violation of the express orders of the defendant; that, in driving the car upon the streets, he was not acting within the scope of his employment, which was expressly confined to duties to be performed in the garage building.

The rule is that a master is responsible for the wrongful acts of the servant committed in the business of the master and within the scope of his employment, even though the servant, in doing

the act, departed from the instructions of the master. *Yates v. Squires*, 19 Iowa 26; *Lewis v. Schultz*, 98 Iowa 341; *Seybold v. Eisle*, 154 Iowa 128; *Nesbit v. Chicago, R. I. & P. R. Co.*, 163 Iowa 39. In *Yates v. Squires*, supra, the court laid down the broad rule as follows:

"A master is liable for the torts of his servant, done in the *course of his employment*, although they are done without his authority, or even against his express directions."

In *Seybold v. Eisle*, supra, this court spoke exhaustively on that subject, and said:

"The general rule with reference to the liability of the master for the acts of his servant is well understood, but its application to concrete cases has been difficult. The general rule, as stated in *Lewis v. Schultz*, 98 Iowa 341, is as follows: 'If the servant was acting in the course of his employment, in clearing up and leveling off the meadow, and while so doing, committed the wrong complained of, the master is liable, although the servant may have disobeyed the master's instructions with reference to setting out fire. It is sufficient to make the master responsible if the wrongful act of the servant was committed in the business of the master, and within the scope of his employment; and this, although the servant, in doing it, departed from the instructions of his master.' "

The court further said, in quoting from Judge Cooley in his work on Torts (2d Ed.) 63:

" 'It is, in general, sufficient to make the master responsible, that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment.' Again, in *Healy v. Johnson*, 127 Iowa 226, we said: 'The doctrine of *respondeat superior* is not limited to the acts of the servant done with the express or implied authority of the master, but extends to all acts of the servant done in discharge of the business intrusted to him, even though done in violation of his instructions.' "

The court further said:

"A learned text-writer, after a careful review of the authorities, thus stated the rule: 'It is not necessary, in order to fix the master's liability, that the servant should, at the time of

the injury, have been acting under the master's orders or directions, or that the master should know that the servant was to do the particular act that produced the injury in question. It is enough if the act was within the scope of his employment, and, if so, the master is liable, even though the servant acted willfully, and in direct violation of his orders. * * * A master cannot screen himself from liability for an injury committed by his servant within the line of his employment by setting up private instructions or orders given by him, and their violation by the servant. By putting the servant in his place, he becomes responsible for all acts within the line of his employment, even though they are willful and directly antagonistical to his orders. The simple test is whether they were acts within the scope of his employment—not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders.' "

Counsel for defendant insist that the evidence shows that plaintiff was guilty of contributory negligence, as a matter of law, and that the court erred in overruling the motion to direct a verdict on that ground, and in submitting that question to the jury. Error is also assigned in overruling its motion for a new trial, based on the same ground.

The testimony was conflicting, and the court properly submitted the question to the jury, and the instruction submitting it is without error.

A ground of the motion for a new trial was the excessive size of the verdict. The verdict does seem excessive. It is grotesque. It is not the province of this court to retry that issue. Concede that all items claimed for repair, in the amount of $127.50, were allowed by the jury, then $272 must have been allowed for loss of the use of the car, pending repair. No evidence was offered by plaintiff to show diligence in getting the car repaired as early as reasonably possible, in order to minimize the liability of the defendant. Defendant, on the morning of the

2. NEW TRIAL: excessive verdict: allowance of avoidable damages.

accident, offered to place the car in repair and have it ready for use in two days,—three days, at the outside. For some reason, defendant was not permitted to do that, and the car was taken to the Herring Motor Company's building. Among the items of repair, $18.50 is charged for labor. Doubtless there is some labor included in the item of painting. It is manifest that not more than three days' labor was employed in repair of the car, and that, of the 30 days that the car was at the Herring Motor Company's building, it stood there approximately 27 days without having any work done on it. That it was the duty of plaintiff to save defendant from unnecessary and unreasonable liability, by having the car repaired as early as possible, is elementary. We think it may be said, as a matter of law, on the record in this case, that not more than three days were employed in repair of the car, and that not more than $30 should be allowed in the verdict for loss of the use of the car. On the record, the verdict cannot stand in a greater amount than $127.50 for repairs, plus $30 for loss of use of the car pending repairs, making $157.50. It was error not to set the verdict aside, or reduce the verdict to $157.50.

The judgment of the court is, therefore, affirmed, if the plaintiff shall, within 30 days, file a remittitur reducing the verdict to $157.50. Otherwise reversed.—*Affirmed on condition.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.