Paul E. HAGENSON, Appellee,

v.

UNITED TELEPHONE COMPANY OF IOWA, Appellant,

George KRAMER and Wilma Kramer, Appellees,

v.

UNITED TELEPHONE COMPANY OF IOWA, Appellant.

UNITED TELEPHONE COMPANY OF IOWA, Appellant.

v.

George E. KRAMER, et al., Appellees.

No. 55169.

Supreme Court of Iowa.

July 3, 1973.

Korf, Diehl, Clayton & Cleverley, Newton, for appellant.

Shaff & Farwell, Clinton, for appellees Hagenson and Jones.

Holleran, Holleran & Shaw, Clinton, for appellees Kramer.

Goodenow & Wright, Maquoketa, for appellees Meyer.

LeGRAND, Justice.

This is an appeal from three judgments against United Telephone Company of Iowa (hereafter called the company) following the trial of consolidated actions growing out of the laying of a telephone cable. The actions were here in an earlier appeal involving other questions. See Hagenson v. United Telephone Co., 164 N.W.2d 853 (Iowa 1969).

For convenience we refer to the individuals who ask damages—Kramer, Jones, and Hagenson—as the landowners. They own three tracts of land which lie north of a county highway. A road (or lane) runs generally north from this county highway providing access to the property of the landowners as well as to the land of several other persons not involved in this litigation. This road has also been used by tradesmen, servicemen, visitors, and, infrequently, by hunters and fishermen. It was never dedicated or condemned as a public highway. One of the landowners has a sign on his property declaring the road to be a private way. Gates exist along its route in at least two places and are sometimes closed.

Sometime before the events in question, two residents in the area contacted the company about the possibility of obtaining telephone service, a convenience none of those in the neighborhood then enjoyed. If service was brought to only two customers, they would be compelled to pay part of the construction cost. If a larger number of subscribers was obtained, the company would bear all expense. The company's commercial manager sent its engineering department a request for engineering services in which he stated untruthfully. "Outside Plant facilities to provide service to four new subscribers. There is a possibility of seven." The engineering department surveyed the road and prepared a blueprint for underground cable to the property of the landowners and others.

Neither the commercial manager nor the engineering department referred the matter to the company's right-of-way officer, and the company did not obtain easements. At no time did the landowners request telephone service nor consent to the installation of cable or equipment.

From the engineering department the matter apparently went to the construction supervisor, who proceeded with the actual work. The construction supervisor did not inquire about ownership of the road. On December 7, 1967, the company laid telephone cable along the private road already referred to. While most of the installation was under the road, some was on private property outside the roadway proper. In addition to the cable, the company placed "pedestals" (outlets) above ground at various locations. These operations left a small pile of earth along the site. This accumulated dirt was packed down by running a tractor over it twice and by leveling it with the bulldozer blade on the tractor.

The jury could have found that in the process of laying the cable, the workmen did considerable damage by knocking down trees, pulling out drain pipes which crossed

beneath the road, injuring Kramer's septic tank tile, and rendering the road, which had been quite usable before, muddy and unusable at places and times afterward.

As already noted, the work was done without the consent of the landowners. They were not present when it was done; when they discovered it they promptly remonstrated. When the company learned what its employees had done, it immediately contacted the landowners, offering either to repair the damages itself or pay for repairs. The parties could not reach agreement.

A rush of litigation then ensued. In separate actions the three landowners claimed damages, both actual and punitive, of the company. A near-by neighbor (Meyer) who wanted phone service asked that an easement for road purposes be declared to exist over the Kramer land in his favor. The company asked a declaratory judgment fixing the rights of the parties as to the road in question. All of the actions were consolidated for trial.

The jury allowed Kramer $2,200.00 compensatory and $2,800.00 exemplary damages; Jones, $300.00 and $900.00; and Hagenson, $1,200.00 and $1,600.00. The trial court dismissed both the Meyer claim of an easement and the company's request for a declaratory judgment. The Meyer claim has been abandoned.

The company alone has appealed, assigning the following errors for reversal: (1) The trial court erred in rejecting evidence of the telephone company's offer to repair the Kramer damage; (2) the trial court erred in directing verdicts against the telephone company on its request for declaratory judgment and against Meyer on the easement claim; (3) the trial court erred in submitting the issue of exemplary damages to the jury; and (4) the trial court erred in its instructions to the jury. We discuss the assignments in this same order.

I. Kramer asked compensatory damages for cost of repairs and for loss of use until

repairs could be made. Bearing on this claim, the telephone company tendered evidence of its offer to either repair the damage or to pay for repairs. The trial court sustained objections to the tendered evidence. It is claimed this was error.

The trespass was complete when the company finished the work on December 7, 1967. If it was liable, liability arose at that time, and no subsequent conduct could change that fact. However, the claim for damages for loss of use presents a special problem. That item involves continuing damage for the period needed to make repairs in the exercise of reasonable diligence. Rosenstein v. Bernhard & Turner Auto Co., 192 Iowa 405, 180 N.W. 282 (1921). The company contends its offers to repair bore on the reasonable period needed to effect repairs, and that Kramer could not stand by, reject repairs, and let additional damages run.

The company is right that Kramer could not simply let the damages run. On this issue, the company could introduce evidence bearing on the period of time reasonably needed to repair the damage. The question is whether the offers to repair or pay constituted admissible evidence on that issue.

We think the offers were not admissible evidence, for they did not show what period of time was necessary to repair the damage; hence they were irrelevant on that point. A determination as to the relevancy and materiality of evidence rests largely in the trial court's discretion. State v. Graham, 203 N.W.2d 600, 604 (Iowa 1973). There was no abuse of discretion here and consequently we find no error in the rulings complained of.

II. The trial court directed verdicts against the company on its request for a declaratory judgment and against Meyer on the claim an easement for a roadway existed.

Since Meyer did not pursue his appeal, we are only concerned with rulings of the

trial court which affect the company. It is claimed the evidence generated a jury question, first, on whether the road was a public one and, second, on whether Meyer had an easement for road purposes across the Kramer land.

III. Regarding the first contention, the evidence shows the cable was laid entirely on private property without consent of the owners and without eminent domain authority. However, the company contends there was substantial evidence that the road was a public one and that the company therefore had a right to lay cable in it under § 488.1, The Code. We do not now decide whether § 488.1 grants such a right. (See 1970 OP. Iowa Atty.Gen. 511). Assuming it does, we find no substantial evidence this road was a public one.

The road was never condemned by governmental authority as a public road nor was it ever formally dedicated to public use by the owners of the land it traverses. The company is therefore put to proving a public road by common-law dedication or by prescription. This court has stated the requirements for such a showing on a number of occasions. Henry Walker Park Ass'n v. Mathews, 249 Iowa 1246, 91 N.W.2d 703 (1958); Sioux City v. Tott, 244 Iowa 1285, 60 N.W.2d 510 (1953); Merritt v. Peet, 237 Iowa 1200, 24 N.W.2d 757 (1946); Slack v. Herrick, 226 Iowa 336, 283 N.W. 904 (1939); Culver v. Converse, 207 Iowa 1173, 224 N.W. 834 (1929); Dugan v. Zurmuehlen, 203 Iowa 1114, 211 N.W. 986 (1927); De Castello v. City of Cedar Rapids, 171 Iowa 18, 153 N.W. 353 (1915). Under these decisions, the proof here was insufficient to generate a fact question on common-law dedication for want of substantial evidence that the landowners intended to dedicate the roadway to public use.

IV. It is equally clear the trial court correctly held the evidence did not generate a jury question that a public road existed by prescription. In prescription cases, the facts are usually the reverse of dedication. Rather than showing acts of dedication by the landowner, the plaintiff must establish use of the road by the public under such circumstances and to such an extent that a prescriptive right arises against the landowner. A case factually quite similar to the present one is Dugan v. Zurmuehlen, supra (203 Iowa at 1119, 211 N.W. at 989), where we pointed out a vital distinction which is determinative here— use of a road by the *public* as distinguished from use by a *limited group*. We said there, "While the uninterrupted use and enjoyment of land as a road or highway by a limited number of persons for a sufficient length of time may establish a private right of way, it is manifest that no dedication or public easement would arise from such user." See also Bradford v. Fultz, 167 Iowa 686, 149 N.W. 925 (1914).

The evidence of the nature and use of this road shows overwhelmingly that any right of user was limited to the owners of the tracts and persons connected with them. See Slack v. Herrick, supra; Culver v. Converse, supra; State v. Kansas City, St. J. & C. B. R.R., 45 Iowa 139 (1876). The trial court rightly held there was no evidence from which a jury could have found the public had a prescriptive right to use the road.

The company also insists the trial court erred in directing a verdict on the Meyer claim of a private easement over the Kramer land. In the absence of an appeal by Meyer, the company cannot complain of this ruling as it may have adversely affected that party's rights. It must show prejudice resulted to its own position. The company seems to say that if Meyer had a roadway easement over the land, then he also had a right to lay telephone cable in it—a right he could authorize the company to exercise for him.

We assume, arguendo, that a jury question was presented on the claim of an easement for road purposes over the Kramer land. The company's difficulty lies

in its contention that this gave Meyer, and by delegation the company, authority to lay a telephone cable under the road. The Meyer easement, if there was one, would have to be by prescription, since no evidence was introduced of an express grant or of an easement by implication. The extent of an easement by prescription is measured by the use upon which it depends. Loughman v. Couchman, 242 Iowa 885, 890, 891, 47 N.W.2d 152, 155 (1951); Restatement, Property, § 477 (1944). If Meyer had a prescriptive easement, it was for use of the road as a way, not for the laying of underground cable. Assuming the easement existed, we see no way this could support the claim it conferred a right to lay cable under the roadway.

We find no error in the rulings on motions to direct verdicts.

V. The trial court submitted the issue of exemplary damages for jury consideration, and the jury allowed each claimant a punitive award in addition to the actual loss. The company contends the trial court erred by letting the jury pass on this question.

■ We held in the first appeal of this case that trespass may entitle the landowner to punitive damages "in a proper case." Hagenson v. United Telephone Co., 164 N.W.2d 853, 857 (Iowa 1969). We must now decide if this is such a case under the record before us.

■ A plaintiff asking exemplary damages is not required to show the defendant acted out of spite or with wicked intent or actual malice. Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841 (1954). True, the term "malice" is used in connection with exemplary damages, but we explained the term thus in McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 369 (Iowa 1972):

" 'Malice' need not be actual ill will or hatred toward another. When that state of mind is present, there is actual malice. However, more commonly in cases of

this kind there is simply legal malice, which may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. We have also defined legal malice as the intentional commission of a wrongful act without just cause or excuse."

The evidence will not support a claim that the company knew the road was private but went ahead anyway. Rather, the evidence shows a mistake which the jury could reasonably find was committed "with a willful or reckless disregard of another's rights" or "without just cause or excuse."

■ The trouble began with a misleading report by the company's commercial manager as to the number of customers to be served. Then followed the engineering workup of the job. The jury could have found the engineering personnel must have observed the sign near the entrance that the road is private and also the gates farther on. Yet they did not contact the right-of-way officer, examine public records, or make inquiry to ascertain if the road was public. The construction department then came in. Again there was no investigation; the workers simply forged ahead. In addition to this, the construction was done roughly, trees were knocked down, pipes were torn out. Under our decisions, we are satisfied that exemplary damages could properly be allowed on the evidence presented.

VI. The company next assigns errors in Instructions 5, 9, and 17.

■ It asserts Instruction 5 correctly defined "preponderance or greater weight of the evidence," but neither there nor elsewhere did the trial court tie the definition down to the particular facts of the case or tell the jury on which of the parties the burden rested to prove the respective cases. The general rules which govern our consideration of this question are well established and have been frequently announced. Instructions should

fully and fairly present the issues to be decided, since they form the only guide the jury has to point the way toward a proper determination. An abstract statement of legal principles without relating them to the relevant circumstances shown by the evidence is insufficient. Baker v. Wolfe, 164 N.W.2d 835, 839 (Iowa 1969); Gibbs v. Wilmeth, 261 Iowa 1015, 1021, 1022, 157 N.W.2d 93, 97 (1968); Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391 (1958). We have also frequently said instructions must be read in their entirety, not piecemeal. Implicit in that statement is another of equal importance—no one instruction contains all the law of a case. Robeson v. Dilts, 170 N.W.2d 408, 414 (Iowa 1969).

There is no quarrel about these rules. As usual, however, difficulty arises when we fit them into the pattern of the case. The company says Instruction 5, while correctly defining burden of proof, is fatally defective because it fails to say who bears that burden; but this is true only if Instruction 5 is lifted out of context and read alone. When all the instructions are examined together, as they must be, this objection is completely without substance.

Following the admittedly correct definition of burden of proof, the trial court told the jury in Instruction 6 that burden of proof meant "the obligation resting upon a party to prove the truth of an allegation made by him which is denied by the opposing party". The company ignores this in arguing Instruction 5 is erroneous, although it was obviously given in explanation of what had been said there.

The statement of issues (Instructions 1 and 2) sets out in general terms the claims of each party. Instructions 10, 10½, 11, 15, 17 and 19 set out and explain the claims and demands of each of the claimants. When these instructions are considered together and related to Instruction 5, the burden of proof issue was correctly and clearly presented.

We see no possibility, however remote, that the jury misunderstood who had the burden to prove each claim asserted under the instructions as given. Accordingly we find no merit in this assignment.

VII. The company's objection to Instruction 9 is limited to the first portion of the instruction. There the trial court told the jury that the road ran through the property of the landowners and that if the telephone company invaded their rights of ownership, "[i]t was a trespass * * * unless it appears that said telephone company was granted the right to use said land devoted to road purposes in the laying of their cable." The company insists this was tantamount to telling the jury as a matter of law that the company trespassed.

We doubt the instruction told the jury a trespass had been committed; but if it did, no error was committed. We have already said the road was not public, and so the company could not rely on § 488.1, The Code. By laying the cable, the company exceeded any private easements which existed, as pointed out in Division IV, and the rule is that "[i]f the owner of an easement exceeds his rights either in the manner or the extent of its use, or if he enters upon or uses the land of the servient estate for any unauthorized purposes, he is guilty of a trespass and the servient owner may maintain such action, although no actual damages have been sustained by him." 28 C.J.S. Easements § 103b, page 785 (1941). See also 25 Am.Jur.2d, Easements, page 524 (1966). The company simply trespassed, and we find no error here.

VIII. The trial court dealt with exemplary damages in Instruction 17. The company makes two basic complaints: exemplary damages should not have been submitted to the jury under the evidence in this trespass case, and the court should have required proof of a wicked state of mind and not merely "an actual wrong without just excuse or cause." We have

already held the first complaint to be groundless. We have also pointed out that ill will or wicked intent is not essential; the jury may infer malice from "a wrongful act without just cause or excuse." McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 369 (Iowa 1972). See also Claude v. Weaver Construction Co., 261 Iowa 1225, 158 N.W.2d 139, 144 (1968).

The trial court did not err in this connection.

■ IX. After trial but before the appeal was taken, the three landowners filed motions in the trial court for attorney fees but did not secure rulings, nor did they argue the motions here. We treat the motions as waived and do not consider the merits of them. Knudsen v. Merle Hay Plaza, Inc., 160 N.W.2d 279, 281 (Iowa 1968).

Finding no reversible error, we affirm the judgments entered by the trial court.

Affirmed.

All Justices concur except UHLEN-HOPP, J., who dissents.

UHLENHOPP, Justice (dissenting).

I concur in the court's opinion except for the portion relating to instruction 5 and the result.

In instruction 5 the trial court defined "preponderance of the evidence," but neither in that instruction nor elsewhere did the court expressly tell the jury who had the burden of proof with respect to the issues. The Telephone Company expressly excepted on that ground.

The burden of proof is an important matter in a case; it has been called vital. Hardee v. York, 262 N.C. 237, 136 S.E.2d 582. A trial court should expressly tell the jury which party has the burden of proof, especially when the matter is called to the court's attention by exception. See rule 196, Rules of Civil Procedure.

This is not a case in which the court adequately covered the matter in its own language. Such a case is Waltham Piano Co. v. Lindholm Furniture Co., 168 Iowa 728, 741–742, 150 N.W. 1040, 1044–1045. There an agreement was asserted as an affirmative defense. The trial court instructed that the defendant averred the defense and "that if the defendant has proved to you by a preponderance of the evidence, that . . . an agreement was made . . . then, and in that case . . . the defendant would not be liable," but "if the defendant has failed to prove to you by a preponderance of the evidence that there was such an agreement . . . then the defendant would be liable." This court held that the burden of proof was adequately covered by the instruction. See also Engle v. Ungles, 223 Iowa 780, 273 N.W. 879. We have no such instruction here.

The Telephone Company's exception should have been sustained, and the judgment should therefore be reversed.